**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 23 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NATIONAL LABOR RELATIONS
BOARD,

      Petitioner,

v.

CHS COMMUNITY HEALTH
SYSTEMS, INC., doing business as
Mimbres Memorial Hospital and
Nursing Home,

      Respondent.

No. 02-9569
(NLRB Case Nos. 28-CA-15948,
28-CA-16291)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I.     INTRODUCTION

United Steelworkers of America ("the Union") filed unfair labor practice charges against CHS Community Health Systems, Inc. ("CHS").  The complaint alleged that CHS violated the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(5) and (a)(1), by unilaterally changing terms and conditions of employment, including, in relevant part, its absence and sick leave policy.  The Union also alleged that CHS instituted the policy changes, issued a new policy manual which it refused to furnish to the Union despite the Union's request, and improperly withdrew recognition of the Union as the bargaining representative of its employees.

During trial before an administrative law judge ("ALJ"), CHS sought to submit "Employee Status Reports" ("ESRs") containing information about employee turnover.  CHS claims that it could not get the ESRs into evidence in a timely fashion because the head of its human resources department quit her job.  CHS requested an extension of time to submit the ESRs after trial, which the ALJ denied because CHS offered "[n]o persuasive reason . . . why . . . these documents have not been produced" and the ESRs "...add[] nothing of substance to alter [his] ruling."  CHS argues the employee turnover evidence would have been probative of whether the Union lost its majority status.

The ALJ concluded, in relevant part, that the CHS unilateral changes to its absence and sick leave policy were changes to the "terms and conditions of employment" in violation of 29 U.S.C. § 158(a)(5). The ALJ also concluded that the CHS refusal to provide the Union with a copy of the new policy manual violated § 158(a)(5). The ALJ found that the Union in fact represented a majority of CHS employees during the relevant time period, and that CHS did not withdraw recognition from the Union. The ALJ reasoned that the Union's failure to negotiate a collective bargaining agreement and to thereby accept CHS employees into membership, CHS employees' scarce attendance at a Union meeting in the fall of 1999, and the alleged turnover of employees proved neither that a majority of CHS employees had renounced the Union as their bargaining representative nor that CHS had a reasonable good-faith doubt[1] about the Union's majority status.

A three-member National Labor Relations Board ("NLRB") panel affirmed the ALJ's conclusion that the absence and sick leave policy changes violated § 158(a)(5). The NLRB adopted the portion of the ALJ's findings of fact relevant

---

[1]The NLRB has recently ruled that an employer must show that the Union *in fact* lost its majority status in order to be relieved of its statutory obligation to bargain with the Union. *See Levitz Furniture Co.*, 333 NLRB 717 (2001). At the time this case was tried before the ALJ, however, an employer could refuse to bargain with the union if it had a reasonable good-faith doubt about the Union's majority status. *Id.* As a result, this court has reviewed the record and considered this case under the more lenient, reasonable good-faith doubt standard.

to this appeal.  The NLRB ordered CHS to cease and desist from refusing to bargain with the Union and from making unilateral changes to the terms and conditions of employment.  It further ordered CHS to rescind the unilateral changes to the absence and sick leave policy at the Union's request and to provide the Union with a copy of the new policy manual.

CHS appeals.  This court has jurisdiction over this appeal pursuant to 29 U.S.C. § 160(f).  We **AFFIRM** the NLRB's order.

## II.  BACKGROUND

In 1995, the employees of Mimbres Memorial Hospital voted for representation by the Union.  The Union was certified as the exclusive collective-bargaining representative of the employees and the employees selected a Union representative.  The representative attended negotiation sessions, met with employees individually or in small groups, fielded complaints, and helped employees with grievances.  In 1996, CHS purchased the hospital and continued to negotiate with the Union.

In April 1999, CHS issued a new absence and sick leave policy without consulting with the Union.  The Union objected to the change in writing.  CHS nevertheless implemented the policy.

After the new absence and sick leave policy was issued, the Union asked CHS to meet and finalize the collective-bargaining agreement.  By September

1999, despite 15 to 20 bargaining sessions over four years, the Union had failed to negotiate a collective-bargaining agreement with CHS. Because a collective-bargaining agreement is a prerequisite to Union membership, CHS' employees never became Union members.

In August 1999, two employees circulated petitions to decertify the Union but acquired only six signatures of the approximately one-hundred and ten employees. CHS' Director of Human Resources was aware of the unsuccessful petition for decertification. In November 1999, CHS canceled two scheduled negotiation sessions with the Union. The Union nevertheless continued to send written requests to bargain.

In January 2000, the hospital created a revised manual reflecting the policy changes. In March 2000, the Union sent CHS a letter requesting a copy of the new manual and demanding to bargain over any policy changes reflected in that manual. The hospital neither responded to this letter nor provided the Union with a copy of the new policy manual. CHS first stated its alleged doubt regarding the Union's continued majority status in response to this litigation, more than one year after it unilaterally changed its policy.

## III.   DISCUSSION

Whether an employer has established a reasonable good-faith doubt as to the Union's majority status is a question of fact. *See Allentown Mack Sales and*

*Serv., Inc. v. NLRB*, 522 U.S. 359, 367 (1998). The NLRB's findings of fact must be upheld if supported by substantial evidence on the record as a whole. *See* 29 U.S.C. § 160(e); *Webco Indus., Inc. v. NLRB*, 217 F.3d 1306, 1311 (10th Cir. 2000). Upon review of the record, this court is convinced that the findings below must be upheld. We **AFFIRM** the NLRB's order for substantially the reasons stated in the NLRB's Decision and Order.

## IV. CONCLUSION

For the foregoing reasons, this court **AFFIRMS** the NLRB's order.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge